IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM A. LANZILOTTI, SR., | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW SAUL, | : | |
| Commissioner of the Social Security | : | |
| Administration | : | NO. 20-3314 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                    July 29, 2022

William A. Lanzilotti, Sr., ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of the Social Security Administration's ("the Commissioner") final decision, denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Plaintiff filed a brief supporting his request for review, and the Commissioner responded. For the reasons set forth below, this court will deny Plaintiff's Request for Review. Judgment will be entered in Defendant's favor and against Plaintiff.

**I. PROCEDURAL HISTORY[1]**

On November 3, 2017, Plaintiff applied for DIB, alleging disability, beginning July 20, 2015. R. at 10. The Social Security Administration ("SSA") denied Plaintiff's claim on April 6, 2018, so Plaintiff requested a hearing. *Id.* On March 7, 2019, Plaintiff appeared before Administrative Law Judge ("the ALJ") Regina L. Warren for an administrative hearing. *Id.* Plaintiff, represented by an attorney, and vocational expert Christine A. Carrozza Slusarski ("the VE"), testified at the hearing. *Id.* at 50-87. On May 22, 2019, the ALJ, using the sequential

---

[1] This court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), Defendant's Response to Request for Review of Plaintiff ("Def.'s Resp."), and the administrative record ("R.").

1

evaluation process for disability,[2] issued an unfavorable decision. *Id.* at 18. The Appeals Council denied Plaintiff's request for review on June 16, 2020, making the ALJ's findings the Commissioner's final determination. *Id.* at 1. Plaintiff sought judicial review from the court on July 7, 2020. Both parties consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

## II.     FACTUAL BACKGROUND

A.     <u>Plaintiff's Personal History</u>

Plaintiff, born on March 7, 1973, R. at 16, was 46 years old when the ALJ rendered her decision. Plaintiff is divorced, single, and has one child. R. at 56-57. Plaintiff has previous relevant work experience as a sales route delivery driver, a semi-skilled medium position as that occupation is generally performed; however, Plaintiff actually performed this position at the heavy level. *Id.* at 16. He has a high school education and can communicate in English. *Id.*

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 404.1520(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 404.1520(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 404.1520(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience, in conjunction with criteria listed in Appendix 2, he is or is not disabled. *See* 20 C.F.R. § 404.1520(g).

B.      Plaintiff's Testimony

At the March 7, 2019 administrative hearing, Plaintiff testified regarding limitations that he alleges result from physical impairments and prevent full-time employment. Plaintiff stated that he had undergone treatments for degenerative disc disease of his cervical and lumbar spine since 2015. R. at 52. Nonetheless, he still experiences neck and muscle pain, including burning, stabbing, numbing, and tingling sensations. *Id* at 66. He also feels pain in his upper extremities. *Id.* at 66-67. Additionally, Plaintiff described ongoing pain in his lower back, extending to his hips, and down the backs of his legs into his feet. *Id.* at 69. This lower back pain is aggravated by walking, sitting, standing, and driving. *Id.* at 71.[3] He regularly uses ice, heat, and an e-stim device to manage the pain associated with his impairments. *Id.* at 59. Plaintiff testified that he has experienced reduced gross motor skills since "2014, or [20]15." *Id.* at 68.

Plaintiff testified that in his prior position as a sales representative for Tropicana products, he maintained the delivery truck, and was responsible for the inventory of the accounts he serviced as well as the inventory on his truck. *Id.* at 54. In this position, he loaded and unloaded the truck and delivered the product to retail customers. This job involved lifting and carrying weights of up to 100 pounds. *Id.* He estimated that approximately 80 to 90 percent of his time in this job required standing and walking. *Id.* at 56. Plaintiff last worked in 2010 when he was involved in a work-related motor vehicle accident. *Id.*

Plaintiff related that he lives in a two-story row home that has a basement and struggles using the stairs in his home. *Id.* at 51. He has difficulty reading, dressing, washing, bathing, and shaving, because his pain increases when performing these activities. *Id.* at 57, 60. Since his accident, Plaintiff has been unable to participate in any sporting activities. *Id.* at 60-61. Plaintiff

---

[3] Plaintiff testified that a doctor recommended neck surgery to him. R. at 71-72. After consulting with two neurologists, who both warned of a significant risk of paralysis, he declined to move forward with the surgery. *Id.*

3

testified that he could use a telephone, wash dishes, and cook for himself and his minor daughter, who resides with him half the time. Plaintiff drives the seven miles required to take his daughter to and from school. *Id.* at 59.

C.     <u>Vocational Expert's Testimony</u>

The VE classified Plaintiff's past position as a sales route delivery driver as a semi-skilled[4] work, performed at the medium[5] level of exertion. R. at 75. However, based on Plaintiff's testimony, the VE characterized the job's exertional level by Plaintiff as heavy.[6] *Id.* The ALJ asked the VE to consider an individual of Plaintiff's age, education, and past work experience, who was limited to light[7] work. *Id.* This individual, from a postural standpoint, can:

> only occasionally climb stairs, . . [and] stoop. And should not climb any ladders. From an environmental standpoint, the individual should avoid unprotected heights and hazards, extreme cold and vibrations.

*Id.* at 75-76. Additionally, this "individual could occasionally reach overhead with the upper extremity . . . [b]ut could perform gross, fine fingering and feeling on frequent basis," without any limitations of the "left upper extremity." *Id.* at 77. The VE responded that, although Plaintiff's

---

[4] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hand or feet may be moved quickly to do repetitive tasks." 20 C.F.R. § 404.1568(b).
[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).
[6] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work." 20 C.F.R. § 404.1567(d).
[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

prior position would be eliminated, there were other jobs in the national economy such an individual could perform, including: (1) recreation aid, 54,000 positions nationally; (2) ticket taker, 57,000 positions nationally; and (3) information clerk, 96,600 positions nationally. *Id.* at 76-77.

The ALJ then inquired whether any jobs existed in the national economy if, along with the limitations outlined in the first hypothetical, the manipulative requirement was eliminated, and the position was reduced to the sedentary[8] exertional level. *Id.* at 78. The VE opined that such a hypothetical still precluded Plaintiff's past work, however the individual could perform work as (1) envelope addresser, 35,000 positions national; (2) sedentary telephone information clerk, 96,600 positions nationally; and (3) order clerk for food and beverage, 93,000 positions nationally. *Id.* at 78-79. Furthermore, these positions would remain available even if the manipulative restrictions were added. *Id.* at 79.

The subsequent hypothetical presented to the VE by the ALJ encompassed the first and second hypotheticals, and considered an individual who was:

> off task greater than one-third of the time, secondary to symptoms, pain, difficulty concentrating, pacing and persisting. [The individual has] to take unscheduled breaks throughout the day, and [is] ab[sent] greater than one to two times per month.

*Id.* The VE responded that such an individual could not perform any previously stated jobs at either the light or sedentary level. *Id.*

Finally, the VE was asked to consider an individual of Plaintiff's age, education, and past work experience, who could:

> frequently from one-third to two-thirds of the time lift up to 10 pounds. Occasionally, up to one-third of the time, 11 to 20 pounds.

---

[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

>    In a total eight hour workday, the individual could sit for six hours, but could only stand or walk for one hour. The individual doesn't require a cane for ambulation. Now from a manipulative standpoint, the individual is right hand dominant, and could perform all manipulative activities involving the use of the upper extremities on a frequent basis, meaning one-third to two-thirds of the time.
>    Frequently use the bilateral lower extremity one-third to two-thirds of the time for operation of foot controls. From a postural standpoint, could perform all posturals on a frequent basis, one-third to two-thirds of the time.
>    And environmentally no limitations, and could frequently be exposed to environmental conditions.

R. at 80. The VE opined that all previously-identified jobs would remain available. This hypothetical, the VE stated, is more commensurate with an individual limited to a sedentary position. *Id.* at 82.

### III.   THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] last met the insured status requirements of the Social Security Act on December 31, 2015.

2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of July 20, 2015 through his date last insured of December 31, 2015 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, [Plaintiff] had the following severe impairments: Degenerative disc disease of the cervical spine (20 CFR 404.1520(c)).

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, [Plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except occasionally reach overhead with the right upper extremity;

    could perform frequent gross and fine fingering with the right upper extremity; occasionally climb stairs and stoop; never climb ladders; and avoid unprotected heights, hazards, extreme cold, and vibrations.

6.  Through the date late insured, [Plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).

7.  [Plaintiff] was born on March 7, 1973 and was 42 years old, which is defined as a younger individual age 45-49, on the date last insured (20 CFR 404.1563).

8.  [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Through the date last insured, considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed (20 CFR 404.1569 and 404.1569a).

11.  [Plaintiff] was not under a disability, as defined in the Social Security Act, at any time from July 20, 2015, the alleged onset date, through December 31, 2015, the date last insured (20 CFR 404.1520(g)).

## IV.  DISCUSSION

A.  <u>Standard of Review</u>

  Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if substantial evidence supports them. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but

rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229)). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

Overall, this test is deferential to the ALJ. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). The court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo*, might have reached a different conclusion. *Id.* Indeed, the court may not undertake a *de novo* review of the Commissioner's decision by reweighing the record evidence itself. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Monsour Med. Ctr.*, 806 F.2d at 1190-91. Nor is the court permitted to "impose [its] own factual determinations." *Chandler*, 667 F.3d at 359. *See Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.     Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that he cannot engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §

8

404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents returning to their past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that the impairment results in functional limitations to performing their past relevant work, then the burden of proof shifts to the Commissioner to prove that work exists in the national economy, which Plaintiff can perform given their age, education, work experience, and residual functional capacity. *See Poulos,* 474 F.3d at 92; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C.  Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ ultimately determined that Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 19. The ALJ concluded that, although Plaintiff could not perform his past relevant work, he could perform other jobs in the national economy at the sedentary level. *Id.* at 17.

In his brief, Plaintiff argues remand is warranted, because the ALJ erred by ignoring evidence, mischaracterizing evidence, and failing to reconcile contradictory evidence. Pl.'s Br. at 3-4. Finally, Plaintiff argues that this court must remand because the appointment of former Commissioner Andrew Saul violates the separation of powers, rendering the ALJ's decision, based

on her authority derived from Mr. Saul, constitutionally defective. *Id.* at 4. This court rejects each of Plaintiff's arguments for the reasons that follow.

1. <u>The ALJ Did Not Err by Ignoring Evidence From Dr. Schina, Because That Evidence Was Neither Medical Opinion Evidence Nor Contrary Evidence That She Was Required to Consider</u>

Plaintiff argues the ALJ erred by not addressing the evidence provided by Dr. Michael J. Schina Jr., M.D. Pl.'s Br. at 9. Defendant contends that the ALJ did not err because the evidence provided by Dr. Schina was dated nearly a year after the relevant period, and does not meet the definition of a "medical opinion" according to the applicable regulations. Def.'s Resp. at 24. This court agrees with Defendant's second contention. Even though the evidence, as Plaintiff asserts, "addresses the period before the date last insured," Pl.'s Br. at 10, it was neither medical opinion evidence nor contrary evidence; therefore the ALJ was not required to consider it.

   a. <u>Dr. Schina Did Not Provide Medical Opinion Evidence</u>

The ALJ ignored the opinion evidence from Dr. Schina. However, even if the ALJ had acknowledged the opinion of Dr. Schina, she was under no obligation to credit it as medical opinion evidence, under recently modified rules.

Plaintiff applied for benefits after March 27, 2017; hence, the applicable regulations provide:

> [a] medical opinion is a statement from a medical source about what [Plaintiff] can still do despite [his] impairment(s) and whether [Plaintiff] [has] one or more impairment-related limitations or restrictions in the following abilities:
> (i) [Plaintiff's] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> (ii) [Plaintiff's] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out

10

> instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> (iii) [Plaintiff's] ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> (iv) [Plaintiff's] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).

The evidence provided by Dr. Schina is an initial evaluation report, consisting of his notes documenting Plaintiff's subjective complaints, his treatment history, as well as previous MRI findings, and Dr. Schina's own treatment recommendations. R. at 567. This evaluation report cannot qualify as a medical opinion entitled to the ALJ's consideration because Dr. Schina never opined about Plaintiff's functional limitations related to the statutorily defined abilities in 20 C.F.R. § 404.1513(a)(2). Nor did Dr. Schina describe what activities Plaintiff could or could not perform in a work setting. *Id.* at 318-20, 396-98. Accordingly, Dr. Schina's report does not contain a medical opinion as defined in the regulations.

> b. <u>Dr. Schina Did Not Provide Contrary or Probative Other Evidence</u>

The evidence Plaintiff presents from Dr. Schina qualifies as "other evidence." Nonetheless, because his opinion was not contrary or probative evidence, the ALJ was under no obligation to address it specifically. Additionally, this evidence was overwhelmed by other evidence in the record cited by the ALJ. *Wallace v. Sec'y of Health & Hum. Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983); R. at 15-16.

An ALJ is not required to discuss or reference every piece of relevant evidence in the record, so long as the decision's basis is discernible by the reviewing court. *See Fargnoli*, 247 F.3d at 42. Furthermore, determining a claimant's RFC is an administrative task to be performed by the ALJ. *See Chandler*, 667 F.3d at 361. As the *Chandler* court explained:

11

> The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. *See* 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, *see, e.g.*, 20 C.F.R. § 404.1527(d)(1)-(2),[9] "[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."

*Id.* (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)).

Plaintiff has failed to demonstrate how Dr. Schina's initial evaluation report contradicted the ALJ's RFC finding that Plaintiff could perform sedentary work with some limitations, R. at 14, or that the basis of the ALJ's decision is indiscernible. Accordingly, based on this argument, the court is unpersuaded that remand is required.

2. <u>The ALJ's RFC Adequately Captured All of Plaintiff's Record-Established Limitations, and Substantial Evidence Supports Her RFC Because She Explained and Considered All the Relevant Evidence in Reaching Her Finding</u>

Plaintiff argues that the ALJ misstated medical evidence when explaining the basis for her RFC finding, and failed to reconcile conflicting evidence. Pl.'s Br. at 3-4. The court addresses each contention in turn and finds first, that the error of any misstated evidence is harmless, because the RFC adequately captured all of Plaintiff's record established limitations. Second, the court finds that the ALJ adequately reconciled any conflicting evidence.

An RFC "'is defined as that which an individual is still able to do despite the limitations caused by his or her impairments(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359, n.1 (3d Cir. 1999)). Substantial evidence supports an RFC assessment if the ALJ discusses the individual's abilities for "8 hours a

---

[9] Although *Chandler* applies the old regulations, the principle that the ALJ, not doctors, must determine a claimant's RFC, still holds. A treating source's opinion about a Plaintiff's RFC is neither useful nor probative, and the ALJ may ignore it. *See* 20 C.F.R. § 404.1520b(c).

12

day, for 5 days a week, or an equivalent work schedule." *Bencivengo v. Comm'r of Soc. Sec.*, No. 00-1995, 2000 U.S. App. LEXIS 38785, at *6 (3d Cir. Dec. 19, 2000) (non-precedential); *see also Santiago-Rivera v. Barnhart*, 2006 U.S. Dist. LEXIS 69559, at *36 (E.D. Pa. Sept. 26, 2006); *Brown v. Kijakazi*, 2021 U.S. Dist. LEXIS 221644, at *16 (E.D. Pa. Nov. 17, 2021); *Sheehan v. Astrue*, No. 10-5598, 2013 U.S. Dist. LEXIS 38201, at *22 (E.D. Pa. Feb. 28, 2013).

An ALJ "may properly accept some parts of the medical evidence and reject other parts, but [he] must consider all the evidence and give some reason for discounting the evidence [he] rejects." *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994). *See also Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." (citation omitted)). As stated above, the ALJ must review the relevant evidence, and if there is substantial evidence to support his factual determinations, this court should accept those factual findings. *See Poulos*, 474 F.3d at 91. Substantial evidence is less than a preponderance. *See Biestek*, 139 S. Ct. at 1154; *Fargnoli*, 247 F.3d at 38. However, evidence is insubstantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace*, 722 F.2d at 1153.

    a. <u>The Alleged Error by the ALJ in Mischaracterizing the Severity of Plaintiff's Cervical Spinal Herniations Was Harmless, Because She Acknowledged Other Evidence in Plaintiff's Favor of His Herniation's Severity</u>

Plaintiff argues that the ALJ "misstated" medical evidence when explaining the basis for her RFC finding. Pl.'s Br. at 4. While this court believes that the ALJ could have more clearly delineated her conclusions, to the extent the lack of clarity suggests the error of misstating

13

evidence, such an error is harmless because she clearly stated her findings and reasoning elsewhere in her RFC assessment.

An error is generally "harmless" when, despite the technical correctness of a plaintiff's legal contention, there nonetheless remains "no set of facts" supporting entitlement to benefits. *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (quoting *Renchenski v. Williams*, 622 F.3d 315, 341 (3d Cir. 2010). Stated differently, "remand is not required . . . [if] it would not affect the outcome of the case." *Rutherford*, 399 F.3d at 553. "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *see Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016) (non-precedential) (citing *Shinseki*, 556 U.S. at 409) (stating a plaintiff must cite specific evidence demonstrating her claimed error caused harm).

Plaintiff specifically criticizes in one sentence at the end of the ALJ's RFC analysis:

> [i]n sum, the above residual functional capacity assessment is supported by a May 2015 MRI of the claimant's cervical spine that demonstrated cord impingement and mild to moderate disc protrusions . . . .

Pl.'s Br. at 4. Plaintiff notes that his MRI report makes only "one reference to a 'mild to moderate' disc protrusion" and that "such temporizing language is not used . . . except with reference to C3-4." Pl.'s Br. at 5. Plaintiff is correct in this respect. However, the ALJ, in fact, elsewhere acknowledged significant findings of spinal cord impingement at the C5-6 disc. R. at 13, 16 (citing Ex. B12F at 3), 515-516. Perhaps inartfully worded, this concluding sentence does not reflect the totality of the ALJ's analysis. Rather, this court reads the ALJ's decision "as a whole," and not in a piecemeal fashion, in finding that the ALJ did not minimize Plaintiff's MRI findings as Plaintiff appears to suggest. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Therefore, even

14

assuming *arguendo*, that the ALJ mischaracterized a portion of the MRI report, it was harmless error at worst, and cannot be the basis for this court to remand.

      b. <u>The ALJ Did Not Exceed Her Scope of Authority, Because It Was Within Her Authority to Discuss All of Plaintiff's Record Established Limitations</u>

Plaintiff also finds fault in the last sentence of the ALJ's RFC with her statement that:

> [i]n sum, the above residual functional capacity assessment is supported by . . . exam findings of 5/5 motor strength in the bilateral upper and lower extremities, tandem gait without assistance, and good bulk and muscle tone (e.g., Exhibit B12F p. 3; B41F pp. 8, 13, 23).

Pl.'s Br. at 4. Plaintiff alleges the ALJ exceeded the scope of her expertise by "play[ing] doctor" in her "notations of tandem gait without assistance, and good bulk and muscle tone," thereby improperly suggesting a relationship between "cervical disk herniations . . . [and] upper limb muscle tone or bulk." Pl.'s Br. at 4-6 (first quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990); and then citing R. at 16). Plaintiff argues that because the ALJ did not exclusively rely on an expert opinion in this statement, she committed error. Pl.'s Br. at 6. Defendant counters that rather than "playing doctor," the ALJ was carefully considering the entire record, and that based on her exclusive responsibility as factfinder, she was not limited to solely "rely[ing] on a medical opinion or a medical 'expert' in determining [Plaintiff]'s RFC." Def.'s Resp. at 20 (citing Pl.'s Br. at 6). This court agrees with Defendant that the ALJ did not exceed her authority.

The ALJ is "not require[d] . . . to use particular language or adhere to a particular format in conducting [her] analysis." *Jones*, 364 F.3d at 505. Additionally, the ALJ has the duty to evaluate a claimant's RFC and is not required to have a doctor establish any component of the RFC. *Chandler*, 667 F.3d at 361. The ALJ here was within her authority to consider observations of a normal gait, tandem walk, motor strength and bulk in determining Plaintiff's RFC, and all of his record established functional limitations, and not just those directly attributable to his cervical

15

degenerative disc disease. R. at 16; *see* 20 C.F.R. § 404.1545. Therefore, Plaintiff's allegation that the ALJ exceeded her scope of authority in analyzing and citing specific evidence in support of her RFC, is incorrect and cannot be the basis for this court to remand.

        c. <u>The ALJ Properly Considered Evidence Provided By Dr. Gaurav in the Context of All the Other Evidence</u>

Plaintiff argues that the ALJ failed to reconcile evidence by Dr. Jain Gaurav, M.D., suggesting more significant functional limitations. Pl.'s Br. at 7. This court finds that the ALJ correctly considered such evidence in light of the other evidence submitted and Plaintiff's testimony.

Plaintiff states that at issue is Dr. Gaurav's July 2015 examination showing left-sided handgrip, triceps, and hip flexor weakness rated at 4+/5; mild non-dermatomal distribution numbness in the distal third, fourth, and fifth digits of the left hand; mildly brisk deep tendon reflexes, and minor difficulty with tandem ambulation. *Id.* (citing R. at 311). He alleges the ALJ failed to reconcile this evidence suggesting greater functional limitations with the other evidence she cited in reaching her decision. *Id.* However, the ALJ compared Dr. Gaurav's findings with those expressed by the consultative examiner who examined Plaintiff two weeks earlier, Dr. Pramod Digamber, M.D. R. at 13-14, 828. Dr. Digamber noted Plaintiff's intact hand and finger dexterity, lack of sensory abnormalities of the bilateral upper extremities, 5/5 strength in the proximal and upper extremity muscles bilaterally, and cervical or paracervical pain or spasms. *Id.* He ultimately concluded that Plaintiff was capable of a range of light work based on his examination findings. R. at 13-16, 830-835. The ALJ balanced this evidence, alongside Plaintiff's testimony that he can do many household chores, and Plaintiff's testimony of "chronic pain affecting his ability to perform activities of daily living." *Id.* at 14. In doing so, she further limited Plaintiff to a range of sedentary work, rather than a limited range of light work. *Id.* at 15. Because

the ALJ properly considered and balanced all the evidence, including the evidence raised by Plaintiff, this court will not remand on this basis.

### 3. The ALJ's Decision is Not Constitutionally Defective and Does Not Violate the Separation of Powers

Plaintiff argues that former Commissioner Saul's appointment by former President Trump violated the federal constitution, because the statute creating the position made the Commissioner's term of office longer than the Presidential term, and required the President to have cause to dismiss the Commissioner. Pl.'s Br. at 4. The Acting Commissioner agrees that the statute is unconstitutional. Def.'s Resp. at 4. However, the parties disagree about whether Plaintiff can obtain any relief based upon this admitted technical constitutional violation. This court finds that he cannot.

The Supreme Court has held that the federal constitution vests all executive power in the President. *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2191 (2020). Since it is impossible for one person to exercise all of that power solely, the Framers expected that the President would appoint and rely upon subordinate officers. *Id.* In order for the President to be accountable for the actions of the subordinate officers, the President must be able to dismiss any such officers at will. *Id.* (citation omitted). The Court has only recognized two exceptions to this rule: (1) agencies that groups of officers lead, and (2) inferior officers (not agency heads) having narrowly defined duties. *Id.* at 2192 (citations omitted).

The Commissioner, the sole head of the agency, has a six-year term of office and is removable only for neglect of duty or malfeasance in office. 42 U.S.C. § 902(a)(3). As such, § 902(a)(3) violates the federal constitution because it restricts the President's ability to remove the Commissioner. *Seila Law*, 140 S. Ct. at 2191-92. As stated previously, the Acting Commissioner

concedes this point. Def.'s Resp. at 8. Nevertheless, Plaintiff cannot obtain any relief based upon this constitutional violation.

While § 902(a)(3) unconstitutionally restricted the President's authority to remove Commissioner Saul, the statute creates no defect in how Commissioner Saul was appointed. Hence, any actions Commissioner Saul took should not be regarded as void. *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021). Customarily, a defect in a removal provision does not prevent the agency head from appropriately exercising the duties of the office. *Id.* at 1788 n.24 (citing *Seila Law*, 140 S. Ct. at 2207-2211). In *Collins*, the Supreme Court gave examples of what might cause an exception to this general rule: (1) evidence that a court had prevented the President from removing an agency head, because the President did not have cause to remove the agency head; or (2) the President expressing public displeasure with the agency head and desiring removal of the agency head, but for the statute. *Id.* at 1789. Neither example applies herein. Former President Trump expressed no dissatisfaction with former Commissioner Saul, whom he appointed. Furthermore, by the time President Biden took the oath of office on January 20, 2021, and, thereafter, expressed his dislike for certain actions taken by former Commissioner Saul, Plaintiff's case was already in this district court, since he had filed his complaint on July 7, 2020. Thus, the agency action Plaintiff complains about – the ALJ's decision – took place before any President expressed concern about former Commissioner Saul. Hence, *Collins* dictates that Plaintiff cannot obtain relief. *Id.*

## V. CONCLUSION

A thorough review of the relevant law and the record indicates that substantial evidence supports the ALJ's decision, and that failure to consider Dr. Schina's evidence was not error. Additionally, the ALJ's RFC captured all of Plaintiff's record-established limitations by considering the relevant evidence and reconciling conflicting evidence. Accordingly, Plaintiff's Request for Review is denied. An implementing Order and Order of Judgment follow.